Alfred J. Riedel and Louise Riedel v. Commissioner.
Riedel v. Commissioner
Docket No. 55087.
United States Tax Court
T.C. Memo 1957-210; 1957 Tax Ct. Memo LEXIS 46; 16 T.C.M. (CCH) 946; T.C.M. (RIA) 57210; October 31, 1957
*46 Petitioners acquired a tract of land by inheritance and used it for many years for hay pasture. The tract was located near the city of Houston, Texas and, after World War II, land around the tract began to be developed for residential purposes. In 1949, petitioners decided to sell the land and employed an engineer to plat it into 31 individual building lots. They constructed roads into the proposed subdivision. Petitioners had no personal experience in the real estate business and employed an agent to sell the lots for them. The agent advertised the lots and performed all other necessary sales activities. Most of the lots were sold in 1950 and 1951 by installment sales contracts. Petitioners received payments on such contracts during those years and in 1952 which they reported on their returns for such years as long-term capital gains. Held, petitioners were engaged in the business of subdividing and selling real estate, and the profits realized from such business during the years in issue were properly determined by respondent to be ordinary income. Eugene J. Pitman, Esq., for the petitioners. Graham R. E. Koch, Esq., for the respondent. RICE
Memorandum Findings *47 of Fact and Opinion This proceeding involves the following deficiencies in income tax and additions thereto: Additions to Tax
Income Tax
Sec. 294
Sec. 294
Year
Deficiency
(d)(1)(A)
(d)(2)
1950
$ 455.02
$64.15
$ 54.99
1951
1,819.68
175.15
1952
636.24
21.43
The only issue is whether certain lots which petitioners sold on the installment basis in 1950 and 1951, and from which they received taxable gain during each of the years in issue, were capital assets or property held for sale in the ordinary course of business. At the hearing, the respondent conceded that the additions to tax were not applicable. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioners, husband and wife, were residents of Houston, Texas, in 1950 and 1951. They moved to Conroe, Texas, sometime during 1952. They filed joint income tax returns for all of the years in issue with the former collector of internal revenue at Austin, Texas. Petitioners were married in 1914 and have at all times since been principally engaged in the business of farming. Sometime in the *48 early 1920's, petitioner Louise Riedel inherited an 81-acre tract of land from her parents. Two parts of the tract were sold during the 1930's, but such parts of the tract as petitioners held were always used by them for hay pasture. The tract was located near the city of Houston, Texas. After the end of World War II, the area in which the tract was located began to be developed for residential purposes. In 1949, the petitioners decided that they would sell the land because they wanted to buy a larger farm elsewhere. They decided that the most profitable way to do so was to subdivide it into building lots. At that time the tract had an area of 34.56 acres. They employed an engineer who made a plat of the tract and divided it into 31 separate building lots. The plat was duly filed and recorded. The petitioners constructed roads into the tract, which were graded and topped with iron ore. Petitioners expended approximately $3,100 in making the property ready for sale. The proposed development was called Lou-Al Courts. Petitioners had no personal experience in the real estate business, and never held a license to sell real estate. They hired a real estate agent to sell the lots for *49 them, but they set the selling price of the lots. The agent received a 5 per cent commission on the gross sales price of each lot. He advertised the lots by placing a large sign on the property and by newspaper advertisements. Seventeen of the 31 lots were sold in 1950 and seven were sold in 1951. Four of the lots sold in 1950 were re-acquired by the petitioners in 1951, and two of those lots were then resold in that year. Three of the lots were given by petitioners to their children and one to a grandchild. At the time of the hearing, they owned three lots which had never been sold, and two of the four which had been repossessed in 1951. Most of the sales were installment sales, and petitioners approved the sales contracts as they were presented by the agent. A bank held the buyers' notes for collection and petitioners paid a fee to the bank for such service. Petitioners received payments on the contracts during each of the years in issue, which they reported on their returns as long-term capital gains. The respondent determined that the proceeds from the sale of the lots constituted ordinary income. Petitioners were in the business of selling lots in 1950 and 1951, and the lots *50 sold by them during such years were held for sale to customers in the ordinary course of such business. Opinion RICE, Judge: This case presents the familiar question of whether building lots sold by taxpayers were held at the time of sale as capital assets or whether such lots were held for sale to customers in the ordinary course of the business of selling real estate. This is essentially a question of fact and, in considering it, the courts have indicated certain tests which are helpful guides in reaching a conclusion. Among such tests are: the frequency of sales as opposed to isolated sales; the activity of the seller or those acting under his instructions or in his behalf, such as making improvements to the property and advertising it to attract purchasers; the nature and extent of the taxpayer's business; the purpose for which the property was originally acquired; and the purpose for which the property was held during the period in question. In addition to those tests, we think it important to keep in mind the fundamental purpose of the capital gains provisions of the Code in deciding whether the property in question was actually held as a capital asset at the time of the *51 sale. Congress intended that profits and losses arising from the everyday operation of a business, whether it is the sole business of a taxpayer or one among several business operations, be considered as ordinary income or loss rather than capital gain or loss. The capital gains provisions of the Code provide preferential treatment for a certain type of income and do not apply to income from ordinary business transactions in property. The basic purpose of the provisions is to relieve a taxpayer from the heavy tax burdens resulting from a true conversion of capital investments. The provisions are an exception from the ordinary income tax provisions. They must be narrowly applied and their exclusions interpreted broadly. , rehearing denied, . In support of their position, the petitioners have made two arguments. The first is that the essence of the real estate activities which they conducted during the years in issue was a liquidation of investment property and, because it was, that any gain realized by them is taxable as capital gain rather than ordinary income. We have said before that *52 no magic result flows from describing real estate sales as a liquidation. As the Court of Appeals said in (C.A. 9, 1941), affirming , certiorari denied : "* * * We fail to see that the reasons behind a person's entering into a business - whether it is to make money or whether it is to liquidate - should be determinative of the question of whether or not the gains resulting from sales are ordinary gains or capital gains. The sole question is - were the taxpayers in the business of subdividing real estate? If they were, then it seems indisputable that the property sold falls within the exception in the definition of capital assets in the statute above quoted - that is, that it constituted 'property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business'." To the same effect is (C.A. 5, 1944), affirming a Memorandum Opinion of this Court dated August 31, 1943 [. Petitioners also argue that the substantial sales activities necessary *53 to sell the lots in question were carried on by an independent contractor whom they employed, rather than by them personally, and that such fact precludes a finding that they were engaged in business. We fail to see what difference it makes whether the real estate business, if it exists, is carried on by the taxpayer himself. or by an agent whom he hires. (C.A. 5, 1957), affirming ; ; , on appeal C.A. 6, July 25, 1956. And, further, we fail to see what real difference it makes whether the person whom a taxpayer employes to conduct his business activities is technically an independent contractor or an ordinary agent to whom specific and detailed instructions are given. In either case the taxpayer is conducting a real estate business for his exclusive benefit and, simply because another performs the necessary activities for him, it does not mean that the profits which accrue enjoy the special treatment of capital gains. While each of these cases must be decided upon its own facts, there is *54 often a marked similarity in the facts of the various cases. We see no distinguishing difference in the facts here and those in Ehrman v. Commissioner; Brown v. Commissioner; and In all three instances, the property had been acquired by inheritance; it had been held for many years for some purpose other than sale; and the substantial sales activities which c onstituted the business were done by someone other than the taxpayer. In all three cases, we concluded that the taxpayer, through an agent, was engaged in the real estate business, and that the profits which accrued to him from that business were taxable as ordinary income and not as capital gains from the sale of the capital assets. We so conclude here. The petitioners have relied heavily on ; and (C.A. 5, 1955), in support of their position. The Thrift case is clearly distinguishable on its facts from the one here. The taxpayer there did not act through an agent and, in fact, conducted no substantial sales activities. He did subdivide and improve his land, but with the intention, at all times, *55 of selling it to a selected group of builders who had agreed beforehand to purchase it when such improvements had been made and who did, in fact, do so. One member of the selected group withdrew, but the portion of the lots which had been assigned to him were taken by other members of the group and not by some new party. We found that he was not in the business of selling lots to home builders or contractors in general, and that no effort was made to sell the lots to the general public, either before or after the land was platted as a subdivision. The lots were never listed with real estate agents nor advertised for sale. We concluded that the taxpayer was interested in selling the lots only to the specific builders with whom he had reached an agreement; that he was not engaged in business as a result of those sales; and that the gains realized were taxable as capital gains. In , on facts somewhat similar to those here, the Court of Appeals for the Fifth Circuit concluded that the taxpayer was not engaged in the real estate business; that the many lots which he sold during the years there in issue were capital assets; and that all of the gains derived *56 from their sale were taxable as capital gains. But the court reached a contrary conclusion on somewhat similar facts in But each of these cases must, of necessity, turn on "the entire factual pattern" found therein. It seems to us that the nub of this case is that the petitioners desired to dispose of a tract of land which had appreciated in value over the long period of time which they held it. But, rather than dispose of the land in a single sale, about which there would have been no question of the gain being entitled to capital gain treatment, they hoped to still further increase their profits by subdividing it and selling it in individual lots. By choosing that method, they became engaged in business. We think it fully in accord with the spirit of the statute that their gains be taxed as ordinary income. See (C.A. 5, 1954). Decision will be entered under Rule 50.